UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LOUANN FRANASIAK,

      Plaintiff,

v.                                         CASE NO. 3:19-cv-1378-MCR

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

      Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for a period of disability and disability insurance benefits ("DIB"), and for supplemental security income due to disability ("SSI"). Following an administrative hearing held on November 19, 2018, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from December 1, 2015, the alleged disability onset date, through February 8, 2019, the date of the ALJ's decision.[2] (Tr. 12-33, 35-77.) Based on a review of the record, the briefs, and

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 19.)

[2] Plaintiff had to establish disability on or before December 31, 2019, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 16, 245.)

the applicable law, the Commissioner's decision is **AFFIRMED**.

## I.      Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.    Discussion

Plaintiff raises three issues on appeal.  Her first argument is that the ALJ failed to provide sufficient justification for rejecting Plaintiff's testimony about her pain and functional limitations.  Plaintiff's second argument is that the ALJ failed to adequately analyze the opinion of Plaintiff's therapist, a licensed mental health counselor.  Plaintiff's third argument for error is that an unresolved inconsistency exists between the Vocational Expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT").

Defendant responds that the ALJ properly evaluated Plaintiff's subjective complaints and substantial evidence supports the ALJ's assessment of Plaintiff's mental health counselor's opinions and finding that Plaintiff can perform other work available in the national economy.  As to Plaintiff's first argument, Defendant asserts the ALJ correctly applied the "pain standard" recognized within this circuit in his assessment of Plaintiff's credibility.  As to Plaintiff's second argument, Defendant asserts the ALJ provided valid reasons, supported by substantial evidence, for giving little weight to the opinions of Amanda Sweat, who Plaintiff identified as her mental health counselor.  Regarding Plaintiff's third argument, Defendant asserts that the ALJ was not required to inquire further into the VE's testimony as no apparent conflict existed between the stated representative occupations and the DOT.

## A.     Plaintiff's Credibility and Subjective Complaints

Plaintiff first asserts the reasons the ALJ found her testimony unpersuasive are not supported by substantial evidence. (Doc. 21 at 13.)  In this regard, Plaintiff claims the ALJ did not sufficiently analyze the testimony regarding her pain and functional limitation.  (*See id*. at 13-16.)  A close reading of the ALJ's decision, in conjunction with the referenced parts of the record, reveals otherwise.

The ALJ must consider all of a claimant's statements about his or her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1520, 416.920.  In so doing, the ALJ must apply the Eleventh Circuit's "pain standard," which requires: (1) evidence of an underlying medical condition and either, (2) objective medical evidence substantiating the severity of the pain asserted, **or**, (3) the objective medical condition is so severe that it can reasonably be expected to give rise to the pain asserted.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

In this case, the ALJ found Plaintiff had the medically determinable impairments of cervical cancer, cervical radiculopathy, headaches, depression, and anxiety, which were found to be severe.  (Tr. 18.) Considering the severe impairments singly and in combination, the ALJ

determined they did not meet or equal a Listing that would direct a finding that Plaintiff was presumptively disabled.  After detailing further consideration of the record, the ALJ assessed Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision."  (Tr. 23.)

Once both prongs of the pain standard are satisfied, "all evidence about the intensity, persistence and functionality limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory finding in deciding the issue of disability."  *Foote*, 67 F.3d at 1561 (citing 20 C.F.R. § 404.1529).  Thus, at this stage the ALJ must consider a claimant's subjective testimony of pain.  *Id.* at 1560.  Furthermore, "[o]bjective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques . . . must be considered in reaching a conclusion as to whether the individual is under a disability." 42 U.S.C. § 423(d)(5)(A).  Moreover, pain testimony is credible when evidence indicates the claimant's condition could reasonably be expected to cause pain; claimant consistently complained of pain; and claimant's daily activities have been significantly affected by pain.  *Foote*, 67 F.3d at 1560 (citations omitted).

Thus, a determination as to pain can only be reached by looking at the entire record, including both objective and subjective evidence.

In this instance, the ALJ's decision is replete with references to the record evidence, both favorable and unfavorable to Plaintiff's position. However, the question is not whether substantial evidence may support Plaintiff's subjective testimony of pain and functional limitations; the question is whether the ALJ's decision to discount Plaintiff's subjective statements is supported by substantial evidence.

If an ALJ decides not to credit a claimant's subjective testimony of pain, he must articulate explicit and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote*, 67 F.3d at 1561-62 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)). The articulated reasons must be based on substantial evidence. *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). When making a credibility determination, the decision maker's opinion must indicate an appropriate consideration of the evidence. *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983) (internal citation omitted).

A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*. 67 F.3d at 1561-62; *see also* 42 U.S.C. § 405(g) (the findings of the Commissioner as to

any facts are conclusive if supported by substantial evidence). In *Allen v. Sullivan*, the Court found that where the ALJ articulated three specific reasons for rejecting claimant's subjective complaints of pain, the claimant's testimony was sufficiently discredited. *Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989). Importantly, the reasons provided by the ALJ in *Allen* included specific references to objective evidence, including medical evidence, which did not support the claimant's allegations. *Id*.

Here, the ALJ specifically found Plaintiff's "allegations regarding the severity of her impairments and her inability to work are not consistent with the medical and other evidence of record." (Tr. 24.) He based this finding on several pieces of evidence, including Plaintiff's hearing testimony, her statements made to others, and objective medical evidence.

Plaintiff's statements concerning her difficulties working due to a lack of childcare for her children is one factor the ALJ properly considered. Plaintiff has five (5) children, ages sixteen to four at the time of the hearing. (Tr. 9.) Plaintiff argues her references to childcare reflect only discussion about why she left some of her prior employers after short periods of time. (Doc. 21 at 13-14.) Contrary to Plaintiff's assertion, however, her own words indicate a lack of childcare impedes her present ability to work. For example, Plaintiff stated, "[H]ow would I have work if I don't have . . . babysitters to

even . . . go and get the job." (Tr. 48.)  She also stated, "I don't really have people to help me as far as will keep my children for me to go to work." (Tr. 47.)  Clearly, Plaintiff stated childcare is a factor in her inability to work.

Additionally, the ALJ correctly calls Plaintiff's veracity into question with his finding that the objective medical evidence does not corroborate statements Plaintiff made to various treatment providers.  One such example is Plaintiff's reports to treating sources Amanda Sweat, LMHC, Dr. Alberto Castiel, M.D. and Melanie Jordan, PT, that the cancer had spread to her legs. (Tr. 1046, 1066, 1080.)  The Court's independent review of the record does not reveal findings that the cervical cancer spread to Plaintiff's legs or reoccurred.  (*See*, *e.g.*, Tr. 1322, 1354, 1365, 1376, 1454 (no evidence of regional or distant metastasis), Tr. 1395 (no tumor present in biopsies), Tr. 1399 (no tumor markers in blood tests).)

In this matter the ALJ also discussed objective medical evidence and clinical findings, from which he concluded the severity of Plaintiff's alleged pain and symptoms did not match her conditions.  (Tr. 21-26.)  After Plaintiff's chemotherapy and radiation for the cervical cancer, Plaintiff's treatments have been conservative in nature.

As to her mental impairments, Plaintiff sought and has obtained counseling from two mental health counselors.   Plaintiff reportedly had nine

(9) counseling sessions with Michael Wade, LMHC, from July 10, 2017 through October 20, 2017. (Tr. 1239.)  Mr. Wade reported Plaintiff presented with normal mood and affect, and situational anxiety and depression.  (*Id*.) There are no treatment or progress notes contained in the record for this provider.  On September 13, 20 and 27, 2018, Plaintiff saw Amanda Sweat, LMHC. (Tr. 1045-59.)  A more thorough discussion of Ms. Sweat's counseling sessions with Plaintiff is set forth in Section B, below.  Ms. Sweat determined Plaintiff had post-traumatic stress disorder and depression. (Tr. 1059.)   She designed a weekly treatment plan for a six-month duration. (*Id*.)  There is no evidence in the record Plaintiff saw Ms. Sweat after September 27, 2018. Moreover, there is no record of any medication prescribed to assist in Plaintiff's mental health therapy.

As to her physical impairments, Plaintiff has been treated with prescription painkillers and muscle relaxers, various modalities of hands-on physical care, and extensive follow-up testing for possible cancer recurrence. Plaintiff was involved in a motor vehicle accident on January 21, 2018. (Tr. 1061.)   Imaging dated March 25, 2018, revealed Plaintiff had bulging discs at C3-C4 and C4-C5, with herniation at C5-C6.  (Tr. 1014-18.)  Treatment for the alleged headaches, neck, and back injuries she claims occurred from the accident have consisted only of chiropractic care, physical therapy, periodic prescription medications for Lortab 5/325 mg and Flexeril 5mg or 10mg, as

9

needed, and acupuncture.  (Tr. 1020-1027, 1029-1037, 1154-1231.)  From her accident, Plaintiff was diagnosed with cervical radiculopathy, for which the Lortab and Flexeril were prescribed and pain management recommended. (Tr. 1023.)

It is well established within this Circuit that treatments of a conservative nature, or non-treatment, may be used as evidence that undermines a claimant's subjective complaints of disabling pain and functional limitations.  *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (conservative courses of treatment are substantial evidence to discredit a plaintiff's testimony regarding non-exertional impairments); *Watson v. Heckler*, 738 F.2d 1169, 1173 (11th Cir. 1984) (finding the ALJ properly rejected the claimant's subjective complaints of pain because, *inter alia*, the claimant failed to seek medical treatment until after her claim for benefits initially was denied); *Morales v. Comm'r Soc. Sec.*, 799 F. App'x 672, 676-78 (11th Cir. 2020) (citing *Wolfe* and finding the plaintiff's treatments that included prescribed medications, physical therapy, and low impact exercises were nonaggressive and conservative tending to negate her claim of disability); *Doig v. Colvin*, Case No. 8:13-cv-1209-T-17AEP, 2014 WL 4463244, at *4-5 (M.D. Fla. Sep. 10, 2014) (stating the meaning of conservative treatment is well known to include any mode of treatment short of surgery, including prescribed medications and steroid injections).  On the

facts of this case, Plaintiff's conservative care is one of the factors on which the ALJ correctly relied to discredit her subjective complaints of functional limitations and pain.

The ALJ was also correct in referring to Plaintiff's activities of daily living and work history when determining whether her testimony was fully credible. *See Douglas v. Comm'r of Soc. Sec.*, 832 F. App'x 650, 656-58 (11th Cir. 2020) (discussing same).   In assessing Plaintiff's subjective statements concerning the intensity, persistence and limiting effects of her pain were not fully credible, the ALJ found neither Plaintiff's alleged physical limitations from headache, neck and back pain, nor her alleged mental limitations from anxiety and depression, were corroborated by her treatment records.  (Tr. 24.) The ALJ also found Plaintiff was not fully credible because the record established Plaintiff's alleged impairments were not the only reason she stopped working, citing additional factors that interfered with Plaintiff's ability to work. (Tr. 24.)

The ALJ's decision reflects a thorough consideration of the record.  He articulated a clear credibility finding concerning Plaintiff's testimony, which the Court finds is supported by substantial evidence and was correctly determined.

### B. <u>Evaluating Opinion Evidence</u>

Plaintiff's second claim of error challenges whether the ALJ properly

weighed the opinion evidence from Amanda Sweat, LMHC, whom Plaintiff identified as her mental health therapist.  (Doc. 21 at 16-20.)

The ALJ is required to consider all the evidence in the record when making a disability determination.  *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3).  Regarding medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding."  *Wainwright v. Comm'r of Soc. Sec. Admin.*, Case No. 06-15638, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

### ***Opinion of a Licensed Mental Health Counselor (LMHC)***

Plaintiff presents therapist Ms. Amanda Sweat, LMHC, as her primary treating source for her mental impairments.  (Doc. 21 at 16-20.)  Plaintiff

initially saw Mr. Michael Wade, LMHC, for nine (9) visits from July 10, 2017 through October 30, 2017. (Tr. 1239.) In a November 5, 2018, "To Whom It May Concern" letter, Mr. Wade states Plaintiff presented with normal mood and affect and was seen for symptoms of anxiety and depression due to situations she faced in life. (*Id.*) He found Plaintiff had an adjustment disorder with mixed anxiety and depressed mood. (*Id.*) There are no treatment notes from Mr. Wade contained in the record.

On September 13, 2018, Plaintiff began counseling with Ms. Amanda Sweat, LMHC. (Tr. 1045-47.) Ms. Sweat reported she saw Plaintiff for three sessions. (Tr. 1055.) During that first one-hour session, Ms. Sweat focused on rapport building and gathering Plaintiff's background history. (Tr. 1046.) Apparently, that same day, Ms. Sweat gave Plaintiff two mental health questionnaires to complete; namely, the PCL-5 and BDI-II.[3] Questionnaires dated September 13, 2018, are not contained in the record. Ms. Sweat, however, references them in her psychotherapy progress note on that date,

---

[3] The PCL is a 20-item self-report measure that assesses the presence and severity of twenty (20) DSM-5 symptoms of post-traumatic stress disorder, that can be used to quantify and monitor symptoms over time, to screen individuals for PTSD, and to assist in making a provisional or temporary diagnosis of PTSD. U.S. Dept. Veterans Affairs, https://www.ptsd.va.gov/professional/assessment/adult-sr/ptsd-checklist.asp (last visited March 10, 2021).

The Beck Depression Inventory- II, commonly referred to as the BDI-II, is a 21 question, multiple-choice self-report inventory, widely used for measuring the severity of depression. *See* Univ. Wis.-Madison, Addiction Research Center, https://arc.psych.wisc.edu/self-report/beck-depression-inventory-bdi (last visited March 10, 2021).

using the questionnaire responses as the basis to determine Plaintiff met the criteria for chronic post-traumatic stress disorder and unspecified depressive disorder depression.  (Tr. 1045.)  Plaintiff returned to see Ms. Sweat one week later, on September 20, 2018, for another hour-long counseling session.  Ms. Sweat's progress note of September 20, 2018, indicates she continued to build rapport and provided supportive reflection by listening to Plaintiff and prompting Plaintiff to detail some aspects of her personal life and relationships.  (Tr. 1048-49.)  There is no treatment note for September 27, 2020.  The record on this date contains completed PCL-5 and BDI-II questionnaires signed by Plaintiff. A Mental Impairment Questionnaire - Listings form was completed by Ms. Sweat, either on September 27 or 28, 2018.  (Tr. 1055-1058.)  On September 28, 2018, Ms. Sweat prepared a psychotherapy treatment plan for Plaintiff, with recommendations for weekly counseling sessions for six months.  (Tr. 1059.)

In completing the Mental Impairment Questionnaire, Ms. Sweat checked off that Plaintiff had moderate limitations in (1) restrictions of activities of daily living, (2) difficulties maintaining concentration, persistence or pace, and (3) difficulties maintaining social functioning.  (Tr. 1056.)  She further noted that "per client" Plaintiff experienced four or more episodes of decompensation within a twelve-month period, each lasting for at least two weeks. (Tr. 1056.)  Plaintiff reported to Ms. Sweat that she had

14

frequent doctor appointments and physical limitations due to injuries, which Ms. Sweat found would cause Plaintiff to be absent from work more than four days per month. (Tr. 1058.)  With a history of three one-hour sessions, Ms. Sweat opined Plaintiff was functioning with a current Global Assessment of Functioning (GAF) score of 57 and had a good prognosis with ongoing Eye Movement Desensitization and Reprocessing (EMDR) treatment.[4]  (Tr. 1055-1056.)

The ALJ gave little weight to Ms. Sweat's opinion (Tr. 26).  He found Ms. Sweats' opinion was based on the subjective statements Plaintiff made, during a short-term, limited counselor-client relationship with Plaintiff, and was inconsistent with Plaintiff's level of functioning.  (*Id*.)  The ALJ further noted Plaintiff failed to seek mental health treatment on a regular basis, and when she did seek treatment it was to gain better coping skills rather than treat significant mental abnormalities.  (*Id*.)

---

[4] The Global Assessment of Functioning Scale (GAF) was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100, with zero (0) indicating the most serious symptoms and impairments, and 100 indicating no symptoms of compromised mental functioning. A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning.  *Diagnostic and Statistical Manual of Mental Disorders*, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc. 2000).

The Department of Veteran Affairs has recognized Eye Movement Desensitization and Reprocessing (EMDR), as a psychotherapy tool for PTSD that can help an individual process upsetting memories, thoughts, and feelings related to the trauma, and thereby obtain relief from PTSD symptoms.  U.S. Dept. Veterans Affairs, https://www.ptsd.va.gov/understand_tx/emdr.asp   (last visited Mar. 13, 2021).

The ALJ's reasons for giving little weight to Ms. Sweat's opinion are supported by substantial evidence in the record and are in accord with the applicable Regulations governing the evaluation of opinion evidence in Social Security disability cases. *See* 20 C.F.R. §§ 404.1502 , 416.902 (Definitions), 404.1513, 416.913 (Categories of Evidence) and 404.1527, 416.927 (Evaluating Opinion Evidence on or before March 27, 2017).

A medical opinion is a statement from a medical source about what the claimant can still do despite his or her impairments.  20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).  As a licensed mental health counselor, Ms. Sweat is not an acceptable medical source and, thus, cannot give a *medical opinion.  See* 20 C.F.R. §§ 404.1502(a), 416.902(a) (defining acceptable medical sources).  Ms. Sweat's opinion is entitled to the same review and weighing process given opinion evidence from non-acceptable medical sources and other sources. 20 C.F.R. §§ 404.1527(f), 416.927(f).

Here, the ALJ properly weighed Ms. Sweat's opinion, taking into consideration the nature, extent and length of her professional relationship with Plaintiff, the sources of information Ms. Sweat used in forming her opinion, the supportability and consistency of the opinion with the other evidence of record, and the nature of Ms. Sweat's specialization, if any. Plaintiff's limited therapeutic counseling sessions with Ms. Sweat are inconsistent with the course of treatment one would expect if Plaintiff were

16

truly disabled.  It is particularly troubling that the record is void of any indication Plaintiff returned to Ms. Sweat after having obtained the Mental Impairment Questionnaire.  Having dedicated the majority of at least two of the three counseling sessions to rapport building and history gathering, it is apparent Ms. Sweat formed her opinion primarily based on what Plaintiff told her; i.e., Plaintiff's subjective statements.  In fact, Ms. Sweat's notation on the Mental Health Questionnaire that "per client," Plaintiff suffered four or more decompensation episodes per year is proof of this point.  Thus, substantial evidence supports the ALJ's determination to give Ms. Sweat's opinion little weight.

C.  **Asserted Conflict Between Vocational Expert Testimony and Dictionary of Occupational Titles**

Plaintiff lastly argues the ALJ improperly relied on the VE's testimony at step 5 to find there are jobs that exist in significant numbers in the national economy that a person with Plaintiff's limitations could perform. More specifically, Plaintiff claims the limitation to perform "simple, routine tasks" presumptively excludes her from all occupations that require a General Educational Development ("GED") reasoning level 2 or above. (Doc. 21 at 20-25.)  In this regard, Plaintiff asserts an impermissible, unresolved conflict exists between the VE's testimony and the DOT.  (Doc. 21 at 20.)

Citing to *Washington v. Comm'r Soc. Sec.*, 906 F.3d 1353 (11th Cir. 2018), Plaintiff maintains there is an apparent, unresolved conflict the ALJ failed to address between the representative occupations of cafeteria attendant (DOT code 311.677-010), sorter (DOT code 361.687.014) and tagger (DOT 229.587-018) and her residual functional capacity ("RFC"). (Doc. 21 at 20-21.)

Occupations with level two reasoning entail the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions, [and] [d]eal with problems involving a few concrete variables in or from standardized situations." *Korstanje v. Comm'r Soc. Sec.*, Case No. 8:19-cv-3003-T-MAP, 2021 WL 129822, at *5 (M.D. Fla. Jan. 14, 2021) (defining same and collecting cases that conclude the requirement of reasoning level 2 or 3 is not inconsistent with the ability to perform only simple tasks as long as those jobs have an SVP of 2).   Each of the identified jobs requires a GED reasoning level of 2 and a Specific Vocational Program ("SVP") time of 2.   *See II United States Dep't of Labor, Dictionary of Occupational Titles (4th ed. 1991).*   Plaintiff contends, however, that the VE's testimony conflicts with the DOT and urges the case be remanded to resolve the conflict. (Doc. 21 at 24.)   At one point, Plaintiff asserts there is a "direct conflict" between the VE's testimony and the DOT classifications.   (*Id.* at 20.) The Court disagrees.

18

"[T]he ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it.  The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence."  *Washington*, 906 F.3d at 1362.  A conflict is apparent "if a reasonable comparison of the DOT with the VE's testimony suggests there is a discrepancy, even if, after further investigation, that turns out not to be the case."  *Id*. at 1365.  On the facts of this case, a reasonable comparison of the VE's testimony and the representative occupations identified in the DOT does not suggest a discrepancy.   With no apparent conflict, the *Washington* duty of further investigation is not triggered.

Significantly, Plaintiff does not challenge the RFC.  The ALJ determined Plaintiff has retained the capacity to perform a reduced range of light exertion work, limited to lifting 20 pounds occasionally and 10 pounds frequently, with frequent overhead reaching and postural limitation. (Tr. 20.) As a result of Plaintiff's described fear of cancer recurrence and her efforts to obtain mental health treatment, the ALJ further reduced the light work occupational base by limiting Plaintiff to perform simple, routine tasks in a static work environment. (*Id*.)

Plaintiff refers to a "growing body of persuasive authority" among the district courts of the Eleventh Circuit to conclude a "majority" of district courts "have ruled that there is an apparent conflict between a VE and the

DOT when the VE classifies jobs as 'simple', and the DOT assigns those jobs a reasoning level of 2." (Doc. 21 at 22.)   A closer look at *Washington* and its progeny reveals there has been significant discussion on this issue and the cases within the district courts of the Eleventh Circuit decided subsequent to those cited by Plaintiff tend to find that no apparent conflict exists between jobs identified with a GED reasoning level 2 and a limitation to simple, routine, repetitive tasks, if the limitation is not further elaborated.

Contrary to Plaintiff's argument, and in agreement with other federal courts in Florida, the undersigned finds *Valdez v. Comm'r Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020), did determine <u>no apparent conflict</u> exists between a limitation to "simple" tasks and vocational testimony that such a person can perform occupations within the DOT requiring a General Educational Development ("GED") reasoning level 2.   *See Green v. Saul*, Case No. 8:19-cv-2021-T-TGW, 2020 WL 5743185, at *8-10 (M.D. Fla. Sep. 25, 2020) (citing to *Valdez*, as construed by then Chief United States District Judge Steven D. Merryday in *Fletcher v. Saul*, Case No. 8:19-cv-1476-T-23AAS, 2020 WL 4188210 (M.D. Fla. Jul. 21, 2020), for "sufficient clarification to permit the conclusion that there is no conflict between a limitation to simple, routine, repetitive tasks and jobs that require a reasoning level 2"); *see also Peterson v. Comm'r Soc. Sec.*, Case No. 2:19-cv-566-FtM-29NPM, 2020 WL 6708022, at *2-4 (M.D. Fla. Nov. 16, 2020), *appeal*

*filed* (11th Cir. Jan. 11, 2021) (the plaintiff has appealed the district court's affirmance of the Decision of the Commissioner of Social Security finding, *inter alia*, there is no apparent conflict between a limitation to perform only simple, routine, repetitive tasks, and those jobs requiring a reasoning level 2).

The *Peterson* court cites to *Valdez* and to *Lawrence v. Saul*, 941 F.3d 140 (4th Cir. 2019) for the proposition that no apparent conflict exists between individuals limited to simple, routine, repetitive tasks and their ability to perform jobs in the DOT that require a reasoning level of 2. *Peterson*, 2020 WL 6708022 at *3. In fact, *Peterson* agrees with *Lawrence* and many other courts that "every other circuit to consider this issue [has found] no apparent conflict between 'simple, routine, repetitive' and Level 2 reasoning." *See Lawrence*, 941 F.3d at 144 n.8; *see also Rae v. Saul*, Case No. 8:19-cv-29870-T-TGW, 2021 WL 211269, at *7-8 (M.D. Fla. Jan. 21, 2021) (relying on *Valdez* in holding jobs with a reasoning level of 1 or 2 are not inconsistent with a residual functional capacity for simple, routine, and repetitive tasks) (citations omitted); *Garrow v. Saul*, Case No. 5:19-cv-586-Oc-18JBT, 2020 WL 5802493, at *6-7 (M.D. Fla. Aug. 19, 2020) (report and recommendation adopted at 2020 WL 5797867 (Sep. 29, 2020)) (citing *Valdez* in holding jobs with a GED reasoning level of 2 are consistent with simple, routine, and repetitive work); *Langer O/B/O Langer v. Comm'r Soc. Sec.*,

21

Case No. 8:19-cv-1273-T-24PDB, 2020 WL 5124957, at *13-14 (M.D. Fla. Aug.

14, 2020) (report and recommendation adopted at 2020 WL 5106680 (M.D.

Fla. Aug. 31, 2020)) (finding the plaintiff's asserted error that the ALJ failed

to resolve an apparent conflict between the limitation to simple and

repetitive tasks and jobs with a reasoning level of two unpersuasive in light

of *Valdez*; remanding on other grounds).

In essence, Plaintiff would have the Court accept a *per se* rule that

every occupation with a reasoning level of 2 presumptively creates an

apparent conflict with individuals limited to "simple" tasks.  As discussed

above, such a presumption, even a rebuttable one, is not in line with the

current persuasive law on this issue.  Notwithstanding the anticipated

Eleventh Circuit ruling in *Peterson v. Comm'r Soc. Sec.*, 2020 WL 6708022,

which should definitively resolve the question whether level 2 reasoning jobs

are beyond the capabilities of individuals restricted to simple tasks, this

Court joins the current majority in holding there is not an apparent conflict

each and every time a person limited to simple tasks is matched with DOT

jobs classified with GED level 2 reasoning.

## III.   Conclusion

The Court does not make independent factual determinations, re-weigh

the evidence, or substitute its decision for that of the ALJ.  Thus, the

question is not whether the Court would have arrived at the same decision on

de novo review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence.  Based on this standard of review, the Court concludes that the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the period in question is due to be affirmed.

Accordingly, it is **ORDERED**:

1.      The Commissioner's decision is **AFFIRMED**.

2.      The Clerk of Court is directed to enter judgment consistent with this Order, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on March 19, 2021.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record